**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**MGM RESORTS MISSISSIPPI, INC.**
*doing business as* **Gold Strike Casino and Resort**                                        **PLAINTIFF**

**V.**                                                                                                  **NO. 3:13-CV-134-DMB-SAA**

**THYSSENKRUPP ELEVATOR CORP.**                                                         **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

This declaratory judgment action arises from a dispute between MGM Resorts Mississippi, Inc. d/b/a Gold Strike Casino & Resort ("Gold Strike"), and ThyssenKrupp Elevator Corporation ("ThyssenKrupp") regarding whether the elevator maintenance contract they entered requires ThyssenKrupp to defend Gold Strike in an underlying state court case. ThyssenKrupp argues that it does not have a duty to defend or indemnify unless and until there is a determination that Gold Strike did not contribute to the conduct alleged in the underlying case. Gold Strike argues that the claims asserted in the underlying case are within the scope of the contract at issue and, therefore, trigger ThyssenKrupp's duty to defend. Before the Court are the parties' cross-motions for summary judgment. Upon due consideration of the motions and for the reasons below, the Court finds that ThyssenKrupp is obligated to provide a defense in the underlying action and, therefore, summary judgment should be entered in favor of Gold Strike.

**I**

On or about May 27, 2002, Gold Strike and ThyssenKrupp entered an Elevator Maintenance Agreement wherein ThyssenKrupp agreed to maintain certain elevator and escalator equipment at the Gold Strike Casino in Robinsonville, Mississippi. *See* Elevator Maintenance Agreement [17-1]. According to the Agreement, ThyssenKrupp is required to:

Examine the elevator equipment for optimum operation.
…

Lubricate equipment for smooth and efficient performance.

Adjust elevator parts and components to maximize the elevator's performance and safe operation.

[Re-lamp] all signals as required (during regularly scheduled visits).

Repair or replace components worn due to normal wear.
…

Test equipment as outlined in the American National Standard Safety Code for Elevators and Escalators …. We will perform governor and safety tests on traction elevators once per year and relief pressure tests on hydraulic elevators once per year.
…

ThyssenKrupp Elevator-employed and supervised elevator technicians … will provide all maintenance courteously and dependably.

*Id.* at 2.  As to Gold Strike's responsibilities, the Agreement provides in relevant part:

Safety.  You agree to follow our recommendations as they pertain to instructing or warning passengers in the proper use of the equipment and to have competent personnel observe the operation at least once every 8 hours.  You agree to report immediately any condition that may indicate the need for correction before the next regular examination.  You agree to shut down the equipment immediately upon manifestation of any irregularities in operation or appearance of the equipment, notify us at once, and keep the equipment shut down until the completion of any repairs.  … You agree to provide a suitable machine room including secured doors, waterproofing, lighting, ventilation and heat to maintain the room at temperature of 50°F minimum to 90°F maximum.  You also agree to maintain the elevator pit in a dry condition at all times.  Should water or other liquids become present, you will contract with others for removal and the proper handling of such liquids.

Other.  You agree not to permit others to make alterations, additions, adjustments, or repairs or replace any component or part of the equipment during the term of this agreement.

*Id.* at 3.  The Agreement includes a defense and indemnification clause, which states:

Delete and replace indemnity provisions so that Purchaser/Owner is indemnified for those claims which arise out of the acts, omissions, or neglect of Elevator

Contractor, but not for those acts, actions, omissions or neglect of the Purchaser/Owner. Claims containing allegations that the acts, actions, omissions, or neglect of both elevator contractor and purchaser/owner have contributed in causing a claim to be filed are not subject to indemnification unless and until it is determined that Purchaser's own acts, actions omissions, or neglect did not contribute to the claim and/or accident. When Elevator Contractor is obligated to indemnify Purchaser under this provision, Elevator Contractor will pay and/or reimburse purchaser for monies paid to defend, settle, or satisfy judgment on the claim.

Add Insurance provisions so that the purchaser/owner is named as an additional insured and is defended and indemnified for actions arising from elevator contractor's acts, actions, omissions, or neglects but is not defended for its own acts, actions, omissions, neglects, or bare allegations.

Elevator Maintenance Agreement [17-1] at Amendment No. 1.

ThyssenKrupp did not secure an insurance policy despite the language to "[a]dd insurance provisions so that [Gold Strike] is named as an additional insured." *Id.* However, ThyssenKrupp maintains that it is self-insured.

On May 27, 2011, the underlying state court action, *Brasel v. MGM Resorts Miss., Inc.,* Cause No. 2011-0122, was filed in the Circuit Court of Tunica County, Mississippi. Doc. [17-2]. The state court plaintiffs allege that on June 1, 2009, they were passengers on a Gold Strike elevator when the elevator rapidly dropped three floors, jolted to an abrupt stop, and trapped them inside for approximately forty-five minutes. Gold Strike is the only named defendant in the original complaint. However, on or about March 27, 2012, the state court plaintiffs filed an amended complaint wherein they added ThyssenKrupp and three other defendants to the lawsuit. Doc. [17-3]. In the amended complaint, the plaintiffs assert claims against Gold Strike, ThyssenKrupp, and the other defendants for negligence and products liability. *Id.* at 3-4. They allege that Gold Strike, ThyssenKrupp, and the other defendants "failed to maintain, operate, inspect and/or service the elevator such that it was in a reasonably safe condition … [and] warn the plaintiffs of the elevator's unreasonable dangerous condition;" that they knew or should have

known the elevator was defective; and that they breached an implied warranty of merchantability. Doc. [17-3] at 3-4.

On June 12, 2009, Gold Strike tendered a request by email to ThyssenKrupp for indemnity and defense regarding the elevator incident, but received no response from ThyssenKrupp to the tender. *See* Doc. [19-12] at 2. On September 23, 2011, after the original complaint was filed, Gold Strike sent ThyssenKrupp a notice of claim and tender of defense and indemnity letter. Doc. [19-11]. On September 28, 2011, ThyssenKrupp denied the tender on grounds that all claims in the original complaint were asserted against Gold Strike only. Doc. [19-14]. On April 3, 2012, after the amended complaint was filed, Gold Strike sent ThyssenKrupp another notice of claim and tender of defense and indemnity letter. Doc. [19-12]. On April 18, 2012, ThyssenKrupp denied that tender as well on grounds that the duty to indemnify is not triggered unless and until it is determined that Gold Strike did not contribute to the alleged conduct. Doc. [19-15]. On April 30, 2012, Gold Strike sent its final notice of claim and tender of defense and indemnity letter to ThyssenKrupp regarding the state court action. Doc. [19-13]. On May 7, 2012, ThyssenKrupp denied the final tender on grounds that the allegations in the complaint and amended complaint do not trigger ThyssenKrupp's duty to indemnify or defend. Doc. [19-16].

On May 21, 2013, Gold Strike filed this declaratory judgment action seeking a determination that ThyssenKrupp has an immediate obligation under the Elevator Maintenance Agreement to provide a defense for Gold Strike in the underlying state court case. Compl. [1]. Gold Strike contends that the allegations in the underlying case do not preclude a finding that ThyssenKrupp is solely liable, thereby triggering the duty to defend, and that ThyssenKrupp should be estopped from refusing to defend because it has previously defended Gold Strike in

similar cases.  *Id.* at 6-7.  On September 20, 2013, ThyssenKrupp and Gold Strike filed the instant motions for summary judgment.

## II

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Coury v. Moss,* 529 F.3d 579, 584 (5th Cir. 2008). When evaluating whether summary judgment is appropriate, a court must construe the facts and evidence in the light most favorable to the nonmoving party.  *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.*, 635 F.3d 734, 736 (5th Cir. 2011) (citing *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010)).  A material fact issue exists if a jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  After the party seeking summary judgment meets its burden, the nonmoving party must "come forward with specific facts showing a genuine factual issue for trial."  *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).  The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but rather must show that there is an actual controversy warranting trial.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

## A

"A declaratory judgment claim is not jurisdiction-conferring; there must be an independent basis for federal jurisdiction."  *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010) (citing *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999)).

Here, the basis of federal jurisdiction is diversity.[1]  *See* 28 U.S.C. § 1332.  As such, the Court will apply the substantive law of the forum state, Mississippi.  *See Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (noting that where "subject matter jurisdiction is based on diversity, federal courts apply the substantive law of the forum state") (citations omitted); *Carl E. Woodard, LLC v. Acceptance Indem. Ins. Co.*, 749 F.3d 395, 398 (5th Cir. 2014) ("[W]e apply Mississippi substantive law when analyzing an insurer's duty to defend claims arising in that state.") (quotation marks and citations omitted).

Under Mississippi law, the "duty to defend [] derives neither from common law nor statute, but rather … is a matter of contractual agreement." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 450 (Miss. 2006).  "If a contract contains ambiguous or unclear language, [] ambiguities must be resolved in favor of the non-drafting party." *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So.2d 956, 963 (Miss. 2008).  Whether a party is obligated to defend depends upon "the allegations of the complaint or declaration in the underlying action." *U.S. Fid. & Guar. Co., v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002) (citing *Sennett v. U.S. Fid. & Guar. Co.*, 757 So. 2d 206, 212 (Miss. 2000)).  An insuring party's "duty to defend … is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the [contract]." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014) (quoting *Muirhead*, 920 So. 2d at 451).  An insurer may only refuse to defend when it is apparent from the face of the complaint that the allegations therein are not covered.  *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).

---

[1] Gold Strike is a Mississippi corporation with its principal place of business in Mississippi, and ThyssenKrupp is a foreign corporation with its principal place of business in Georgia.  Compl. [1] at 1-2.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**B**

In its motion for summary judgment, ThyssenKrupp argues that it has no duty to defend because all allegations against it in the state court complaint are shared with Gold Strike, and the Agreement proscribes Gold Strike from being defended for its own negligent conduct. ThyssenKrupp argues that the state court claims fall outside the scope of the Agreement.[2] ThyssenKrupp contends that it did not have sole responsibility for the maintenance of Gold Strike's elevators and, thus, could not be solely liable for the alleged negligent conduct. For this reason, ThyssenKrupp argues that the duty to defend is not triggered.[3] ThyssenKrupp further contends that its prior decisions to defend or indemnify are not precedent for doing so in subsequent lawsuits.

In its motion for summary judgment, Gold Strike asserts that the allegations in the state court complaint fall within the scope of the Elevator Maintenance Agreement and trigger ThyssenKrupp's duty to defend. Gold Strike argues that ThyssenKrupp erroneously relies on an ambiguous contract provision that relates only to providing indemnification, not defense.[4] Gold Strike clarifies that it does not seek declaratory relief regarding the duty to indemnify at this time, nor does it assert that ThyssenKrupp waived the right of refusal to defend because it

---

[2] ThyssenKrupp also advances an argument that an employee of Gold Strike known only by "Jason" was responsible for inspecting the elevators every 8 hours to support its contention that Gold Strike's acts or omission preclude the duty to defend. Def.'s Mem. [23] at 8. However, Gold Strike claims it had no employee named "Jason" during the relevant time period and that ThyssenKrupp is using a transcription error in a deposition to create an issue of fact. Because summary judgment can be granted without considering whether the alleged employee exists, the Court will not address this argument.

[3] In addition, ThyssenKrupp argues that the true facts exception precludes its obligation to provide a defense. *See Acceptance Ins. Co. v. Powe Timber Co. Inc.,* 403 F. Supp. 2d 552, 558 (S.D. Miss. 2005) ("Where the insurer has notice … of "actual" or "true" facts which suggest that the underlying plaintiff's alleged injury is covered by its policy, then it is reasonable to require the insurer to defend its insured notwithstanding that the facts alleged in the underlying complaint do not fall within the policy's coverage."). As discussed *infra*, ThyssenKrupp's duty to defend is triggered by the allegations in the underlying complaint. For this reason, the Court will not address ThyssenKrupp's arguments regarding the true facts exception.

[4] Gold Strike argues that the first paragraph of Amendment No. 1 is ambiguous. Doc. [22] at 9-10. That paragraph, however, discusses the claims for which Gold Strike is indemnified. It does not address the duty to defend. *See* Elevator Maintenance Agreement [17-1] at Agreement No. 1.

defended in prior lawsuits.  Gold Strike argues, however, that ThyssenKrupp could be found fully liable for the alleged conduct and is, therefore, obligated to provide a defense in the state court case.

The portion of the Agreement that the parties interpret differently concerns claims asserted against both ThyssenKrupp and Gold Strike.  ThyssenKrupp contends that because there has been no determination that Gold Strike's conduct did not contribute to the underlying claims, the duty to defend has not arisen.  Gold Strike, on the other hand, argues that the provision on which ThyssenKrupp relies is only relevant in determining the duty to indemnify.  According to the Agreement:

> Claims containing allegations that … both [ThyssenKrupp] and [Gold Strike] have contributed in causing a claim to be filed are not subject to indemnification unless and until it is determined that [Gold Strike's] own acts, actions omissions, or neglect did not contribute to the claim and/or accident.  When [ThyssenKrupp] is obligated to indemnify [Gold Strike] under this provision, [ThyssenKrupp] will pay and/or reimburse purchaser for monies paid to defend, settle, or satisfy judgment on the claim.
>
> … [Gold Strike] is defended and indemnified for actions arising from [ThyssenKrupp's] acts, actions, omissions, or neglects but is not defended for its own acts, actions, omissions, neglects, or bare allegations.

Elevator Maintenance Agreement [17-1] at Amendment No. 1.

The Court finds that the language in the defense and indemnity clause of the Agreement is unambiguous and must be enforced as written.[5]  *See Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998).  A plain reading of the clause indicates that the "unless and until" restriction relates to indemnification only.  When a determination is made that Gold Strike did not contribute to a claim and ThyssenKrupp must indemnify, ThyssenKrupp must also reimburse

---

[5] Although the Court finds the contract unambiguous, had there been a finding of ambiguity in the contract terms, such ambiguity would be construed against ThyssenKrupp since it drafted the contract.  *See Harrison Cnty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 950 (Miss. 2013) (citing *Gulf Ins. Co. v. Neel-Schaffer, Inc.*, 904 So. 2d 1036, 1049 (Miss. 2004)).

Gold Strike for any defense, settlement, or satisfaction of judgment costs incurred. The parties agree that Gold Strike is not owed a defense for its own acts, actions, omissions, neglects, or bare allegations. However, ThyssenKrupp interprets this provision to mean that it has no obligation to provide a defense because Gold Strike may be found liable for the alleged conduct in the underlying case.[6]

Contrary to ThyssenKrupp's argument, the duty to defend does not depend on the ultimate determination of liability, but rather on whether the allegations in the complaint fall within the scope of the contract. *See Am. States Ins. Co. v. Natchez Steam Laundry,* 131 F.3d 551, 553 (5th Cir. 1998) ("Under Mississippi law, an insurer's duty to defend an action against its insured is measured by the allegations in the plaintiff's pleadings regardless of the ultimate outcome of the action.") (internal quotation marks and citations omitted); *Delta Pine & Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) ("With regard to coverage and duty to defend, under Mississippi law, the ultimate outcome or merit of the claim is irrelevant with regard to the question of a duty to defend.") (citation omitted); *Estate of Bradley v. Royal Surplus Lines Ins. Co. Inc.*, 647 F.3d 524, 531 (5th Cir. 2011) ("Unlike the duty to defend, which can be determined at the beginning of a lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all.") (citations omitted). ThyssenKrupp "has an absolute duty to defend a complaint which contains allegations covered by the language of the [contract], but it has absolutely no duty to defend those claims which fall outside the [scope] of the [contract]." *Farmland Mut. Ins. Co. v. Scruggs,* 886 So. 2d 714, 719 (Miss. 2004) (citing *Sennett*, 757 So. 2d at 212).

---

[6] *See* Def.'s Sur-Reply [28] at 6 ("[P]ursuant to the clear and unambiguous language of the elevator maintenance agreement, that duty is legitimately qualified by negligence or liability on the part of Gold Strike which [does not] trigger a duty to defend. The contract clearly states negligence on the part of Gold Strike is not defensible by ThyssenKrupp.").

The Court finds that the allegations in the underlying complaint fall within the scope of the Agreement. The state court plaintiffs allege that Gold Strike, ThyssenKrupp, and the other defendants "failed to maintain, operate, inspect and/or service the elevator such that it was in a reasonably safe condition[;] … [failed] to warn the plaintiffs of the elevator's unreasonable dangerous condition[;]" knew or should have known that the elevator was defective; and breached the implied warranty of merchantability. Doc. [17-3] at 3-4. Under the Agreement, ThyssenKrupp was responsible for examining and lubricating elevator equipment, adjusting elevator parts and components to maximize performance and safe operation, re-lamping signals, repairing and replacing components, and testing equipment. Elevator Maintenance Agreement [17-1] at 2. A ThyssenKrupp technician was on location at the Gold Strike property regularly to service and maintain elevators.[7] Likewise, Gold Strike was responsible for warning passengers on the proper use of equipment, having competent personnel observe the elevator's operation every 8 hours, reporting elevator issues, shutting down equipment upon notice of irregularities, as well as maintaining the elevator pit. *Id.* at 3. These responsibilities appear to fall within the state court claims for failure to "maintain, operate, inspect and/or service the elevator" and knowledge of the elevator's defective condition. As such, the allegations in the underlying complaint are within the scope of the Elevator Maintenance Agreement. *See Delta & Pine Land Co.*, 530 F.3d at 399 ("As long as the claim is 'arguably' covered by the insurance policy, the duty to defend is triggered.") (citation omitted).

In *Barden Mississippi Gaming, LLC v. Great Northern Insurance Company*, the Fifth Circuit Court of Appeals addressed an insurer's obligation to defend and/or indemnify under a

---

[7] *See* Def.'s Mem. [23] at 8 ("On the other hand, 'Odell' is the ThyssenKrupp technician who handles service and maintenance. Contrary to Gold Strike's assertions, the facts stated by their [sic] own corporate representative support and bear out that Gold Strike is not absolved from their [sic] maintenance duties just because ThyssenKrupp has a technician there '*almost* daily.'") (emphasis in original).

contract that provides coverage only where the insurer is solely liable. 576 F.3d 235, 238-39 (5th Cir. 2009) (applying Mississippi law). The Fifth Circuit found, under the facts of the case, that the duty to defend attaches where allegations in the underlying complaint do not foreclose a judgment that the insurer is solely negligent. *Id*. at 239. The court noted that the "duty to defend is broader than the duty to indemnify, because the insurer has a duty to defend when there is any arguable basis for liability under the policy." *Id*. (citation omitted).

Gold Strike relies on *Barden* to support its argument that the duty to defend is triggered. In contrast, ThyssenKrupp argues that the contract at issue in *Barden* differs from the Elevator Maintenance Agreement in this case because there is no requirement that ThyssenKrupp be solely liable for the duty to defend to attach. Despite the factual differences in the *Barden* contract and the Agreement, this Court finds the Fifth Circuit's holding in that case instructive. The Agreement provides that Gold Strike is not defended for its own negligent conduct. ThyssenKrupp contends that because it is possible for Gold Strike to be found liable, there is no duty to defend. This Court disagrees. Similar to *Barden*, the allegations in the underlying state court complaint make it possible for ThyssenKrupp to be found solely liable and Gold Strike not liable. One of the underlying claims is that the defendants failed to maintain and/or service the elevator. According to the Agreement, ThyssenKrupp is responsible for servicing Gold Strike's elevators. Although Gold Strike has certain responsibilities with regard to the elevators, ThyssenKrupp was primarily responsible for maintaining and servicing the elevators at issue.[8] As such, it is possible that Gold Strike could be relieved of liability in the underlying case. Therefore, based on the allegations in the state court complaint, the duty to defend is triggered,

---

[8] Moreover, because ThyssenKrupp was in the business of maintaining and servicing elevators, it may have been able to detect potential elevator defects that Gold Strike could not have. *See Barden*, 576 F.3d at 239 ("Importantly, the complaint alleges a defective product, meaning that it is possible that [the underlying plaintiff's] injuries could ultimately be attributed to some latent defect in the stool that [the insured] could not have detected even with the utmost diligence.").

and ThyssenKrupp must provide Gold Strike with a defense as required by the Elevator Maintenance Agreement.[9]

### III

The Court finds that Gold Strike's motion for summary judgment is GRANTED [19] and ThyssenKrupp's motion for summary judgment [16] is DENIED. In light of the broad duty to defend under Mississippi law and the *Barden* holding, ThyssenKrupp is obligated under its duty to defend to provide Gold Strike a defense in the underlying case, *Brasel v. MGM Resorts Miss., Inc.,* Cause No. 2011-0122, currently pending in the Circuit Court of Tunica County, Mississippi.

SO ORDERED, this the 30th day of September 2014.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

---

[9] *See Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 611 (5th Cir. 2001) (where multiple grounds for recovery are asserted in complaint, insurer must provide a defense if any ground falls within terms of policy) (citations omitted); *see EEOC v. Southern Publ'g Co.,* 894 F.2d 785, 790-91 (5th Cir. 1990) (adopting rule that "insurer must bear the entire cost of defense when 'there is no reasonable means of prorating the costs of defense between the covered and the not-covered items.'").