IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MGM RESORTS MISSISSIPPI, INC.**     **PLAINTIFF**
**d/b/a GOLD STRIKE CASINO AND RESORT**

**V.**     **NO. 3:13-CV-00134-DMB-SAA**

**THYSSENKRUPP ELEVATOR CORP.**     **DEFENDANT**

## OPINION AND ORDER

Before the Court is the post-judgment motion for the determination of attorney's fees and expenses filed by Plaintiff MGM Resorts Mississippi, Inc. d/b/a Gold Strike Casino & Resort ("Gold Strike").[1] Doc. #41. For the reasons below, the Court finds that Gold Strike is entitled to $109,931.50 in attorney's fees and $9,549.45 in expenses.

## I
## Background

Gold Strike sued ThyssenKrupp Elevator Corporation ("ThyssenKrupp") seeking a determination that under a contract executed by the parties governing elevator maintenance ("Elevator Maintenance Agreement"), ThyssenKrupp had a duty to defend and indemnify it in an underlying Mississippi state court action, namely, *Brasel v. MGM Resorts Miss., Inc.*[2] Doc. #1. After considering the parties' dueling motions for summary judgment, the Court ruled in Gold Strike's favor, entering judgment "that ThyssenKrupp must pay and/or reimburse Gold Strike for

---

[1] Gold Strike also "requests all additional relief to which it might be entitled in the premises." Doc. #41 at 2.

[2] The state court action, *Lebecca Brasel, et al. v. MGM Resorts Mississippi, Inc. d/b/a Gold Strike Casino and Resort, et al.*, was filed on May 27, 2011, as Cause No. 2011-0122 in the Circuit Court of Tunica County, Mississippi. A recitation of its facts can be found in the Court's Memorandum Opinion and Order dated September 30, 2014. Doc. #39.

all expenses, including attorney's fees, incurred with Gold Strike's defense of the underlying lawsuit." Doc. #40.

In the present motion, filed pursuant to Federal Rule of Civil Procedure 54(d)(2) and the Elevator Maintenance Agreement,[3] Gold Strike requests $109,931.50 in attorney fees and $9,549.45 in expenses, which is comprised of $59,837.26 from the *Brasel* lawsuit, and $59,643.69 from the instant declaratory judgment action. Doc. #41; Doc. #41-3. ThyssenKrupp does not challenge the expenses requested by Gold Strike but, for several reasons, objects to the attorney's fees sought as excessive. Doc. #42.

## II
## Evidence

Gold Strike supports its motion with the sworn "lodestar" affidavit of its attorney of record, who authenticates the attachments to the motion and offers details about the reasonableness of the fees and expenses sought by Gold Strike. Doc. #41-3. The motion's attachments include the Elevator Maintenance Agreement and Gold Strike's attorney's biography and billing statements. Doc. #41-1 to -2; Doc. #41-4 to -11. Attached to its rebuttal, Gold Strike offers the sworn affidavit of another attorney in this district regarding the reasonableness of Gold Strike's fees and expenses, along with information about his qualifications, education and experience, and an inflation calculator. Doc. #44-1 to -3.

---

[3] "Parties may, by contract, provide that in the event of a dispute the losing party will pay the prevailing party reasonable attorneys' fees." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 289 (Miss. 2005). Here, ThyssenKrupp does not dispute that Gold Strike is entitled to recover attorney's fees and expenses under the Elevator Maintenance Agreement, which provides in relevant part:

> In the event a third party is retained to enforce, construe or defend any of the terms and conditions of this agreement or to collect any monies due hereunder, either with or without litigation, the prevailing party shall be entitled to recover all costs and reasonable attorney's fees.

Doc. #41-1 at 4.

ThyssenKrupp filed an opposition in response, along with two exhibits: (1) Exhibit A, a chart comparing Gold Strike's billing statements to its own; and (2) Exhibit B, all of its counsel's billing statements from both this proceeding and the underlying state action. Doc. #42; Doc. #42-1; Doc. #42-2.

### III
### Attorney's Fees

"In this diversity case, where Mississippi law supplies the rule of decision, '[s]tate law controls both the award of and the reasonableness of fees awarded.'" *Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 242 (5th Cir. 2011) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)); *see Shelak v. White Motor Co.*, 636 F.2d 1069, 1072 (5th Cir. 1981); *Carl E. Woodward, LLC v. Acceptance Indem. Ins. Co.*, No. 1:09CV781-HSO-RHW, 2012 WL 1574936, at *5 (S.D. Miss. May 3, 2012). "It is well settled in [Mississippi] that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court and any testimony by attorneys with respect to such fee is purely advisory and not binding on the trial court." *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 269 (Miss. 1999) (quoting *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 418 (Miss. 1966)).

"When calculating attorneys' fees, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Carl E. Woodward, LLC*, 2012 WL 1574936, at *5 (citing *Tupelo Redevelopment Agency*, 972 So. 2d at 521–22). A court should then consider whether the lodestar figure should be adjusted upward or downward depending upon the circumstances of the case. *Id*. In making this assessment, a court must "consider the eight factors enumerated in Rule

3

1.5 of the Mississippi Rules of Professional Conduct."[4] *Collins v. Koppers, Inc.*, 59 So. 3d 582, 593 (Miss. 2011). The Rule 1.5 factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

Miss. R. Prof. Conduct 1.5(a).[5]

## A. Lodestar Method

Gold Strike's lead counsel, Scott Burnham Hollis, submitted a sworn affidavit and 293 pages of detailed billing records, reflecting that he and his associate and legal assistant spent a total of 367.4 hours in the underlying lawsuit and 260.2 hours in the instant declaratory judgment action. Doc. ##41-3 to -11. Hollis indicates a fee of $245.00 per hour for himself as a partner in his firm and lead counsel, $165.00 per hour for his associate, Robert T. Jolly, and $90.00 per hour for his legal assistant, Stephanie Dale. Doc. #41-3. In *Brasel*, Hollis and his team billed the following hours:

| Timekeeper | Hours Billed | Hourly Rate | Total |
|---|---|---|---|
| S. Hollis | 62.5 | $245 | $15,312.50 |
| R. Jolly | 119.5 | $165 | $19,717.50 |
| S. Dale | 185.4 | $90 | $16,686.00 |

---

[4] The Rule 1.5 "factors are also known as the '*McKee* factors.'" *Collins*, 59 So. 3d at 593 n.9 (citing *BellSouth Pers. Commc'ns, LLC v. Bd. of Sup'rs of Hinds Cnty.*, 912 So. 2d 436, 446 (Miss. 2005), for the proposition that such factors were articulated for first time in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982)).

[5] "Other than a minor rewording and reordering, [the Rule 1.5] factors are virtually identical to the factors set out by the United States Supreme Court in *Hensley* [*v. Eckerhart*, 461 U.S. 424 (1983)]." *Tupelo Redevelopment Agency*, 972 So. 2d at 521 (discussing *Hensley*, which adopted factors first set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *see also Carl E. Woodward, LLC*, 2012 WL 1574936, at *5 (Rule 1.5 factors "are nearly identical to those set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).").

*Id*. at ¶ 10. In the instant case, they billed:

| Timekeeper | Hours Billed | Hourly Rate | Total |
| --- | --- | --- | --- |
| S. Hollis | 224.5 | $245 | $55,002.50 |
| R. Jolly | 0.0 | $165 | $0.00 |
| S. Dale | 35.7[6] | $90 | $3,213.00 |

*Id*. at ¶ 12 (footnote added).

At the time the affidavit was prepared, Hollis had been engaged in the active practice of law for 16 years, "primarily … represent[ing] … casinos in litigated matters." Doc. #41-3 at ¶ 4. During that time, he accumulated several honors, including an AV rating by Martindale-Hubble and listings in The Best Lawyers in America and Mid-South Super Lawyers. *Id*; Doc. #41-2. Based on this experience, Hollis states that the rates charged by his legal team are "reasonable and customary for the work necessary in these matters," and are in line with the "usual and reasonable rates in Mississippi for lawyers and legal assistants of equivalent experience and expertise." Doc. #41-3 at ¶ 7.

Gold Strike also submitted the affidavit of a local practitioner, Wilton V. Byars, III, who has actively practiced law in this district since 1995.[7] Doc. #44-1 at ¶ 2. Byars reviewed the voluminous case files from the *Brasel* lawsuit and this proceeding, and the billing records associated with each, as well as Gold Strike's motion for attorney's fees. *Id*. After thoroughly reviewing the many pleadings and motions filed in each case and Gold Strike's lodestar calculation, and based upon his familiarity with Hollis' reputation and experience as well as the "customary rates" charged by attorneys in this district, Byars concluded that the fees and

---

[6] The affidavit attributes 34.7 billable hours to Dale for the instant action. Doc. #41-3 at ¶ 10. However, the number reflected in the invoices sent to Gold Strike is 35.7. Doc. #41-9; Doc. #41-10; Doc. #41-11. The 35.7 figure from the invoices presumably is the correct number, as the requested lodestar in the affidavit ($3,213.00) divided by Dale's requested hourly rate ($90) equals 35.7. The Court will use this figure in its fee review.

[7] Based on the biographical information attached to Byars' affidavit, Byars is a shareholder in his law firm and, like Hollis, has an AV rating by Martindale-Hubble and is listed in The Best Lawyers in America, among other accomplishments. Doc. #44-2.

expenses sought by Gold Strike in each case are "both reasonable and necessary." *Id*. at ¶ 11, ¶ 14.

ThyssenKrupp challenges the reasonableness of the number of hours billed in this declaratory judgment action and the hourly rates charged in both actions.[8] The Court addresses each of ThyssenKrupp's challenges in turn.

### 1. *Hours Billed*

"With respect to the billing in this declaratory judgment action," ThyssenKrupp argues that many of the billing entries submitted by Hollis and his team "are vague" and contain "vague descriptions."[9] Doc. #42 at 3. Specifically, it points to several summary judgment billing entries that simply state, "Work on Motion for Summary Judgment." *Id*. Based on this observation, ThyssenKrupp concludes that "billing judgment was not used and the time billed is excessive" and thus, "a reduction in the hours billed to [Gold Strike] by half would be appropriate." *Id*. at 4, 6.

The Court finds that, as argued by ThyssenKrupp, Gold Strike's billing entries related to summary judgment in this proceeding are somewhat vague. In a case based on federal question jurisdiction, where substantive federal law would apply to the issue of attorney fees, this would likely necessitate a percentage fee reduction. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (collecting cases for the proposition that "a district court may reduce the number of hours awarded if the documentation is vague or incomplete"). However, under Mississippi law, billing statements are not always required. *See Collins*, 59 So. 3d at 593–94 (affirming attorney fee award after noting that party had "cite[d] no authority for her

---

[8] *See Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568, 2011 WL 6699447, at *2 (S.D. Miss. Dec. 21, 2011) ("The Court should exclude from this initial fee calculation hours which were not reasonably expended.") (internal quotation marks and citation omitted).

[9] ThyssenKrupp has not contested the hours billed in the underlying state court action.

6

proposition that the defendants' attorneys were required to submit their actual billing statements"). Indeed,

> In any action in which a court is authorized to award reasonable attorneys' fees, *the court shall not require the party seeking such fees to put on proof* as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

Miss. Code. Ann. § 9-1-41 (2015) (emphasis added); *Philips Med. Capital, LLC v. P & L Contracting, Inc.*, No. 2:10-CV-00092-DAS, 2012 WL 860324, at *4 (N.D. Miss. Mar. 13, 2012) (applying Miss. Code. Ann. § 9-1-41).

The Court's observation in this matter is sufficient to cure any vagueness that may exist in Gold Strike's billing statements related to summary judgment. *See Theobald v. Nosser*, 784 So. 2d 142, 147 (Miss. 2001) ("the evidence put forth … could be considered by the chancery court in its determinations, but the court was still entitled to use its own experience and observation in making the final determination as to what fees were appropriate."). Having reviewed both parties' motions and all filings in this proceeding, the Court is uniquely positioned to determine if the time billed is excessive. The Court finds—based on its experience, observations, and the unimpeached, unrebutted sworn affidavits of Hollis and Byars—that the time billed by Gold Strike in pursuit of the declaratory judgment, including the time billed pursuing summary judgment, was neither excessive nor unreasonable.[10] Gold Strike's briefs were thoroughly researched and well written—a fact that greatly contributed to its success in this proceeding. Similarly, based on the Court's review of all of the credible evidence, consisting of

---

[10] *See Philips Med. Capital, LLC*, 2012 WL 860324, at *4 ("Philips submitted an affidavit and invoices to support its demand of $21,635.32 in attorney's fees and expenses, and the Defendants offered nothing to challenge the accuracy of this exhibit. Based on the information before it, the court finds that Philips' demand is reasonable and awards $21,635.32 in attorney's fees and expenses to Philips.").

7

Gold Strike's authenticated billing statements in the underlying case and the unimpeached and unrebutted sworn affidavits of Hollis and Byars, the Court also finds the hours spent in the underlying lawsuit to be reasonable. *See Mabus v. Mabus*, 910 So. 2d 486, 489 (Miss. 2005) (en banc) ("Of equal import, Julie offered no proof to impeach or rebut the testimony of Roberts and King.").

ThyssenKrupp also attempts to use its counsel's billing records to establish the factual predicate to attack the reasonableness of Gold Strike's fee request. Relying on the number of hours its own attorneys billed in this case, ThyssenKrupp argues that Gold Strike's attorneys "billed … substantially more [hours] than [ThyssenKrupp's attorneys] for very similar tasks." Doc. #42 at 3–4. ThyssenKrupp has not cited any authority suggesting that such a comparison would assist the Court in determining the reasonableness of Gold Strike's fee request. And, the Court has found only persuasive authority indicating that it may exercise its discretion in considering such evidence. *See Marks Constr. Co. v. Huntington Nat'l Ban*k, No. CIV.A. 1:05CV73, 2010 WL 1836785, at *4 (N.D. W. Va. May 5, 2010) ("[T]he decision of whether a comparison of opposing counsel's time records and resulting fees would aid in the determination of the reasonableness of requested attorneys' fees is solely within the court's discretion.") (citation omitted). In order for ThyssenKrupp's billing records to aid in the determination of the reasonableness of Gold Strike's requested attorney's fees, the Court would first have to determine whether ThyssenKrupp's billings were reasonable. The mere fact that a losing party's counsel billed a certain number of hours at a certain rate does not automatically provide insight into the reasonableness of such billings and, without more, offers very little, if any, insight regarding the reasonableness of the fees sought by the prevailing party. Because ThyssenKrupp fails to offer anything more in this regard, a comparison of fees in this case is not warranted.

*2. Hourly Rates*

ThyssenKrupp's remaining arguments concern the reasonableness of the hourly rates charged by Gold Strike's legal team. Doc. #42 at 7–10.

First, ThyssenKrupp argues that Gold Strike may not solely rely on its attorney's affidavit to establish that his rates are reasonable within this market because "[a] reasonable hourly rate is generally established through affidavits of other attorneys practicing [in this market]." *Id*. at 7 (citing *Illinois Cent. R. Co. v. Harried*, No. 5:06-CV-160, 2011 WL 283925, at *10 (S.D. Miss. Jan. 25, 2011). Although such corroborating affidavits may "generally" establish the reasonableness of an hourly rate, Mississippi law certainly does not require them. In two of its seminal attorney's fees cases, the Mississippi Supreme Court has affirmed fee awards that were supported by the affidavit of only the moving party's attorney. *See Tupelo Redevelopment Agency*, 972 So. 2d at 522-23 ("Furthermore, the trial judge had before him Ragland's motion for assessment of attorneys' fees, with the attached sworn affidavit of Ragland's attorney."); *Mabus*, 910 So. 2d at 489 (affirming attorney fee award where chancellor relied on affidavits of billing attorneys and itemized billing statements). This authority renders ThyssenKrupp's claim about what Gold Strike relies upon untenable. Regardless, Gold Strike supported its fee request through the affidavit of another attorney practicing in this district by submitting Byars' affidavit with its rebuttal.

Next, ThyssenKrupp cites several federal cases that purportedly "indicate[] that a reasonable hourly rate to be charged by an attorney of Mr. Hollis' experience is not more than $200.00 per hour." Doc. #42 at 7. Only two of the many cases cited by ThyssenKrupp were decided in this district, both of which were decided over a decade ago in 2003. *Id*. at 8 (citing *Boroujerdi v. Mississippi State Chem. Lab.*, 2003 WL 23199871 (N.D. Miss. 2003); *Lipscomb v.*

9

*Columbus Mun. Separate Sch. Dist.*, 261 F. Supp. 2d 626, 633 (N.D. Miss. 2003)). Those cases are far too old to be of any use in this attorney's fee determination. The remaining authority considers attorney rates in the Southern District of Mississippi. *Id.* at 9. Because this Court must consider the rates in light of what is customary in this Northern District, a determination of what is reasonable in another district is unpersuasive. *See Mississippi Power & Light Co. v. Cook*, 832 So. 2d 474, 487 (Miss. 2002) (reversing fee award because "there is no record of the fee customarily charged in this locality"); Miss. R. Prof. Conduct 1.5(a) (reasonableness of hourly rate determined by considering "the fee customarily charged in the locality for similar legal services"); *see also Pruett v. State*, 574 So. 2d 1342, 1368 (Miss. 1990) (Anderson, J., dissenting) (citing *Alberti v. Sheriff of Harris Cty.*, 688 F. Supp. 1176, 1190 (S.D.Tex.1987) for proposition that "[r]easonable fees are determined by the prevailing market rate" and "the prevailing market rate is the rate existing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").

The Court is persuaded, however, by a Northern District case decided by Chief Judge Sharion Aycock, who recently approved hourly rates exceeding those sought in this case. *See Sales v. Bailey*, No. 2:12-CV-00056, 2015 WL 1825060, at *2–4 (N.D. Miss. Apr. 22, 2015) (approving rates of $250.00 and $300.00 per hour for partners, $175.00 per hour for associate attorney, and $125.00 per hour for legal assistant; collecting cases). In light of *Sales* and the unrebutted sworn affidavits of Hollis and Byars, the Court finds the proposed rates to be reasonable. *See Philips Med. Capital, LLC*, 2012 WL 860324, at *4 (finding fees and expenses awarded reasonable where defendants offered nothing to dispute documentary evidence submitted).

Finally, ThyssenKrupp challenges the hourly rates of Gold Strike's attorneys by comparing the billing rates of its counsel and Gold Strike's counsel. Doc. #42 at 7. For the same reasons explained above that a comparison is not warranted regarding the number of hours billed by Gold Strike's attorneys, such a comparison is similarly unwarranted regarding Gold Strike's attorneys' hourly rates.

### 3. *Lodestar Figures*

Given the Court's findings above, the Court concludes that Gold Strike's attorneys' hours billed and hourly rates are reasonable and appropriate. Consequently, and consistent with the discussion above, the Court's lodestar figure is $51,716 in the *Brasel* lawsuit and $58,215.50 in the instant proceeding.

### B. Rule 1.5 Factors

The Court next considers whether any of the Rule 1.5 factors counsel in favor of an upward or downward departure from the lodestar amounts. In this regard, the Court finds:

(1) The attorney time and labor spent, as described above, is what a reasonable client would expect an attorney to spend on this matter. The legal questions involved were neither novel nor complex, and thus did not require any special skill that would justify a departure from the lodestar.

(2) There is no evidence or contention that Gold Strike's counsel's representation of Gold Strike prevented them from pursuing additional employment opportunities, or that Gold Strike was aware of any such limitations on its counsel's employment opportunities. Thus, the second factor does not justify deviation from the lodestar amount.

(3) The hourly rates discussed above are in accord with that customarily charged in this locality; therefore, no deviation from the lodestar is warranted due to the third factor.

(4) In this case, Gold Strike was granted summary judgment, securing a declaratory judgment that ThyssenKrupp had breached its duty to defend Gold Strike against the personal injury claims made in the *Brasel* lawsuit. In *Brasel*, after ThyssenKrupp four times refused to provide it a defense, Gold Strike vigorously defended itself. After defending itself for nearly three years, the *Brasel* plaintiffs dismissed their lawsuit. Based on Gold Strike's success in both cases, the Court finds the attorney fee calculated by the lodestar amount is appropriate and a deviation is not appropriate.

(5) There is no evidence or contention that Gold Strike put any time constraints on counsel, and thus, a deviation from the lodestar amount based on the fifth factor is unwarranted.

(6) There is no evidence regarding the nature and/or length of the professional relationship between Gold Strike and counsel. Thus, the sixth factor does not justify departure from the lodestar.

(7) No evidence contrary to Gold Strike's sworn affidavits regarding counsel's experience, reputation, and/or ability is before the Court; thus, no deviation under the seventh factor is appropriate.

(8) Finally, there is no evidence regarding the structure of the fee agreement between Gold Strike and its counsel. Thus, the eighth factor does not justify a deviation from the lodestar amount.

In sum, after considering the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct, the Court finds that no adjustments to the lodestar figures are warranted.

## IV
## Expenses

Gold Strike also requests, without objection by ThyssenKrupp, expenses in the amounts of $8,121.26 from *Brasel* and $1,428.19 from this action for filing fees, copy charges, private

investigator fees, process-service fees, legal team travel expenses, fees associated with acquiring voluminous medical records, and fees associated with conducting research on Westlaw, Pacer, and Accurint.

This Court has already declared that under the Elevator Maintenance Agreement, "ThyssenKrupp must pay and/or reimburse Gold Strike for *all expenses*, including attorney's fees, incurred with Gold Strike's defense of the underlying lawsuit." Doc. #40 (emphasis added). Additionally, the Elevator Maintenance Agreement provides:

> In the event a third party is retained to enforce, construe or defend any of the terms and conditions of this agreement or to collect any monies due hereunder, either with or without litigation, the prevailing party shall be entitled to recover *all costs*[11] and reasonable attorney's fees.

Doc. #41-1 at 4 (emphasis and footnote added). The Court's declaration, read in conjunction with the Agreement's prevailing party language, sufficiently encompasses all of the expenses sought by Gold Strike. Accordingly, the Court will award Gold Strike all of its requested expenses.

# V
# Conclusion

Gold Strike's Motion for Determination of Attorneys' Fees and Expenses [41] is **GRANTED**. Gold Strike is awarded $109,931.50 in attorney's fees and $9,549.45 in expenses.

**SO ORDERED**, this 4th day of September, 2015.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[11] The Elevator Maintenance Agreement does not define the term "costs." The Court therefore must give the word its ordinary meaning. *Cont'l Cas. Co. v. Hester*, 360 So. 2d 695, 697 (Miss. 1978) ("It is well settled that the words of a contract are to be given their ordinary meanings.") (citation omitted). "'[C]osts' has an everyday meaning synonymous with 'expenses.'" *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012) (quoting 10 C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2666 (3d ed. 1998)). "'Expenses,' of course, include all the expenditures actually made by a litigant in connection with the action. Both fees and costs are expenses but by no means constitute all of them." 10 Fed. Prac. & Proc. Civ. § 2666 (footnote omitted).